United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTY LINKENHOKER,<br><br>          Plaintiff,<br><br>     v.<br><br>WARREN E. RUPF, SHERIFF,<br>CONTRA COSTA COUNTY,<br>MICHAEL COSTA<br><br>          Defendants.<br>_____/ | No. C-06-05432-EDL<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** |

## I.     Introduction

Plaintiff Kristy Linkenhoker filed this action on September 5, 2006. Defendants filed the present motion to dismiss the First Amended Complaint ("FAC") on December 8, 2006. The motion came on for hearing on January 16, 2007. Upon consideration of the papers submitted by the parties and the argument of counsel, and for the reasons stated at the hearing and below, the Court grants in part and denies in part Defendants' motion to dismiss.

Plaintiff was employed as a Deputy Sheriff in Contra Costa County from 2002 to August 2005. Plaintiff makes the following claims: (1) Sexual Harassment and Discrimination in Violation of Title VII, 42 U.S.C. § 2000e-2(a); (2) Retaliation in Violation of Title VII, 42 U.S.C. § 2000e-3(a); (3) State Claim - Sexual Harassment in Violation of FEHA, Cal. Gov't Code § 12940(a), (j)(1) and (k); (4) State Claim - Retaliation in Violation of FEHA, Cal. Gov't Code § 12940(h); (5) State Claim - Wrongful Termination in Violation of Public Policy against gender- and race-based discrimination, sexual

harassment, and retaliation; (6) Battery, against Defendant Costa; (7) Sexual Battery, against Defendant Costa. In support of these claims, she makes the following allegations:

8. On or about June 4, 2004, Defendant COSTA, one of Plaintiff's supervisors, and a Sergeant with in the Contra Costa County Sheriff's Department, approached her from behind while Plaintiff was working and blew on her neck in a sexual manner. Plaintiff moved away from Defendant COSTA, but he stepped closer, blowing into her ear.  When Plaintiff told Defendant COSTA to stop, he instead proceeded to grind his hips up against her buttocks.  He forced Plaintiff into the desk, so that she could not get away, and continued rubbing himself against her in a sexual manner. Plaintiff finally managed to slip away and went into a deputy's room. However, Defendant COSTA followed her into the room, and began questioning where she was going.

9.   On or about June 6, 2004, Defendant COSTA again came to the building where Plaintiff was working, and verbally harassed and retaliated against her by actions including divulging identifying information about Plaintiff in front of inmates such as what kind of vehicles she drove, the city she lived in and what her full name is. This kind of personal information can put sheriffs deputies at great risk of harm from inmates and is strictly prohibited.

10.   Plaintiff did not file a formal EEOC charge or DFEH charge immediately earlier because she was in extreme fear of retaliation and harm to her personal safety and career if she went outside the Contra Costa County Sheriff's Department to formally and officially complain of sexual harassment.

11.   Instead, on or about July 2004, Plaintiff verbally reported the sexual harassment and retaliation by Sergeant Costa to Sergeant Simmons.  Sergeant Simmons was required by Sheriff office policy to report complaints of sexual harassment to his supervisor, Lieutenant Lemay. However, Defendants did nothing about Plaintiff's complaint of sexual harassment and retaliation.

12. On or about August 10, 2004, an inmate was pulled off a bunk at the Detention Facility by another inmate while Plaintiff was working. She did not need any medical attention. Plaintiff had no knowledge this was going to happen. Nonetheless, on October 3, 2004, Sergeant Nugent called Plaintiff in and questioned her about the incident. During this questioning, Plaintiff again reported the sexual harassment and retaliatory conduct of Defendant COSTA. Again, no corrective or remedial action was taken by Defendants in response to Plaintiff's complaints.

13. In November 2004, Defendants RUPF and CONTRA COSTA COUNTY issued a written warning (Phase I) against Plaintiff for the incident of August 10, 2004. Male deputies have done similar or far worse things, including injuring inmates deliberately, but have not been disciplined.

14. In early December 2004, the Contra Costa County Sheriff's Department conducted a training session on sexual harassment in the workplace. During the training, when the deputy covered the issue of reporting sexual harassment to a Sergeant, one of the Supervisors, Sergeant Poplin, pointed to a grenade with a #1 handle on the pin of the grenade, and said, "yeah, anyone who wants to report sexual harassment, take a number." He then started laughing.

15. Sergeant Poplin is well known for his belief that women should not be deputies. He has made numerous comments to the effect that women don't belong in this job, that they should be home barefoot and pregnant, and that women are not strong enough for the deputy job.

16. In early December 2004, after the sexual harassment training, Plaintiff asked Sergeant Simmons whether he remembered her reporting the sexual harassment and retaliatory conduct of Sergeant Costa. At first he denied remembering, but when Plaintiff told him she was going to get a lawyer, he admitted that he remembered some of it. Sergeant Simmons then asked Plaintiff if she wanted to report it, and she stated that she did. Plaintiff handwrote out a brief synopsis of what happened and gave it to Sergeant Simmons. He stated he would make a report.

17. Days later, in December 2004, Plaintiff was instructed to report to Internal Affairs scheduled for December 14, 2005. Plaintiff met with Internal Affairs on that date and described what Sergeant Costa had done to her on June 4 and June 6, 2004. She also told Internal Affairs about other women who were sexually harassed by Sergeant Costa.

18. Sergeant COSTA unexpectedly retired in or about early 2005.

19. On or about January 4, 2005, Plaintiff was notified by Captain Pascoe that Defendant Sheriff's Department was "reopening" the original investigation of the inmate incident which occurred back in August 2004 and for which Plaintiff had already been disciplined. He handed her a document dated December 16, 2004 notifying her that Defendant Sheriff's Department was reopening this investigation.

20. In or about early May 2005, Plaintiff informed Sergeant Kidder and Sergeant Simmons that she intended to resign and get a lawyer and sue the Sheriff's Department for the sexual harassment, as well as the harassment and retaliation she had been experiencing as a result of her sexual harassment complaint. They urged her not to quit, and refused to accept her resignation. They placed her on administrative leave pending the second investigation into the inmate incident.

21. Defendants RUPF and CONTRA COSTA COUNTY Department terminated Plaintiff on or about August 1, 2005, purportedly because of her handling of the inmate incident. In fact, however, Defendants terminated Plaintiff because she had complained of sexual harassment and retaliation. Upon information and belief, Defendant COSTA participated in the decision to terminate Plaintiff including by providing input to Defendants RUPF and CONTRA COSTA COUNTY. This fact lies within the knowledge of Defendants; however, based upon information and belief, it is likely to have evidentiary support after reasonable opportunity for discovery and further investigation.

First Amended Complaint, ¶¶ 8-21.

4

**II.     Standard for Motion to Dismiss**

A motion to dismiss under Rule 12(b)(6) should not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Dismissal may be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990). In analyzing a motion to dismiss, the Court must accept as true all material allegations in the complaint, and construe them in the light most favorable to the nonmoving party. NL Industries, Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). Conclusory allegations unsupported by the facts alleged, however, need not be accepted as true. Holden v. Hagopian, 978 F.2d 1115, 1121 (9th Cir. 1992).

**III.    Timeliness of Charges Filed with EEOC and DFEH**

Defendants argue that Plaintiff's sexual harassment claims under Title VII and FEHA should be dismissed because of her failure to timely file administrative claims with the EEOC and DFEH, respectively. See Santa Maria v. Pacific Bell, 202 F.3d 1170, 1176 (9th Cir. 2000) (complainant must file a charge with EEOC within 180 days of the last act of discrimination, or within 300 days if proceedings were initiated with state or local agency); Morgan v. Regents of Univ. of Cal., 88 Cal. App. 4th 52, 63 (2000) (under FEHA, complaint must be filed within one year of unlawful practice). Plaintiff admits that she filed her administrative claims on December 8, 2005, more than a year after the harassment by Costa in June 2004, but argues that she has alleged a continuing violation, which continued into the limitations period. See Pl's Suppl. Filing (EEOC charge filed 12/8/05). Plaintiff also argues that she is entitled to equitable tolling and estoppel.

**A. Title VII Claim**

Although Plaintiff did not file her EEOC or DFEH charges within the statutory period from Costa's initial harassment, Plaintiff contends that Defendants' discriminatory conduct continued into the limitations period. She points to Sergeant Poplin's derogatory comments about women and his comment discouraging anyone from complaining about sexual harassment by brandishing a grenade in December 2004; Costa's harassment of other women prior to his retirement in early 2005; and Defendants' discriminatory discipline of Plaintiff. Opp. at 3; Compl., ¶¶ 13, 14, 15, 17, 21.

The Supreme Court addressed the issue of the continuing violation theory in National R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002). In Morgan, the Supreme Court considered an African-American employee's Title VII claim against Amtrak for racial discrimination and retaliation, based on discrete discriminatory and retaliatory acts and a racially hostile work environment. The Supreme Court held that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges," rejecting the "related acts" method of proving a continuing violation, which had provided that "so long as one act falls within the charge filing period, discriminatory and retaliatory acts that are plausibly or sufficiently related to that act may also be considered for the purposes of liability." 536 U.S. at 113-114. The Supreme Court held that "[e]ach incident of discrimination and each retaliatory adverse employment decision [such as termination, failure to promote, denial of transfer, or refusal to hire] constitutes a separate actionable 'unlawful employment practice.'" Id. at 114.

The Supreme Court distinguished hostile environment claims from discrete acts of discrimination or retaliation, reasoning that the very nature of a hostile environment claim involves repeated conduct, such that the unlawful employment practice cannot be said to occur on any particular day. 536 U.S. at 115. "In determining whether an actionable hostile work environment claim exists, we look to 'all the circumstances,' including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Id. at 116 (citations omitted). As to the timeliness of filing a Title VII charge based on hostile work environment, the Court held: "It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." Id. at 117.

Here, Plaintiff alleges sexual touching and assault by Costa on June 4, 2004 (FAC, ¶ 8); Costa's verbal harassment and disclosure to inmates of Plaintiff's name and city where she lived on June 6, 2004 (id., ¶ 9); a disciplinary warning in November 2004 for the inmate incident on August 10, 2004 (id., ¶ 13); Poplin's grenade comment at the sexual harassment training in early December 2004 (id.,

¶ 14); the reopening of the inmate incident investigation on December 16, 2004, two days after Plaintiff met with Internal Affairs and described Costa's actions and several days after the sexual harassment training, after which Plaintiff reported Costa's conduct to Sergeant Simmons (id., ¶¶ 16, 17, 19); and termination on or about August 1, 2005 (id., ¶ 21). Under Morgan, the last act that falls under the rubric of hostile work environment was Poplin's comment, which occurred in December 2004; the incidents of retaliation for her complaints of harassment and discrimination – reopening the investigation and termination– must be viewed as discrete acts that are not actionable absent a timely charge, even when related to other acts. 536 U.S. at 113-14. Plaintiff has not pled ongoing actionable remarks by Poplin or other ongoing harassment after December 2004. Accordingly, although her Title VII claim is timely insofar as it is based on her termination, her claim as alleged in the FAC is not timely insofar as it is based on harassment/hostile work environment unless excused by tolling or estoppel.

Plaintiff argues that the limitations period for filing should be tolled and/or estopped as to the claims against Costa. The failure to exhaust administrative remedies is subject to waiver, estoppel, and equitable tolling. Lyons v.England, 307 F.3d 1092, 1105 n.5 (9th Cir. 2002) (timely exhaustion of administrative remedies is "an administrative 'requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling.'") (quoting Zipes v. TWA, 455 U.S. 385, 393 (1982)). Defendants argue that failure to exhaust is not subject to equitable relief, citing Blum v. Superior Ct., 141 Cal. App. 4th 418, 422 (2006). In Blum, however, the appellate court held that a verified DFEH complaint was a prerequisite to bringing a civil action, but found that because the plaintiff had timely filed his DFEH complaints, there was "no issue of waiver, estoppel or equitable tolling" there. Id. (citing Okoli v. Lockheed Technical Operations Co., 36 Cal. App.4th 1607, 1613 (1995), for the principle that failure to exhaust "is a jurisdictional, not a procedural, defect").

Equitable estoppel focuses primarily on the actions taken by the defendant in preventing a plaintiff from filing suit, whereas equitable tolling focuses on the plaintiff's excusable ignorance of the limitations period and on lack of prejudice to the defendant. Santa Maria, 202 F.3d at 1176. Equitable estoppel in the limitations setting is also called fraudulent concealment, and requires active misconduct by a defendant, above and beyond the wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff from suing in time. Id. at 1177. Here, Plaintiff has not alleged any facts to suggest that

7

Defendants actively prevented Plaintiff from filing her administrative complaint. At most, she suggests that Defendants prevented her from filing a complaint by threatening her: Costa revealing private information to inmates, Sergeant Poplin making the grenade remark about anyone complaining about sexual harassment, and re-opening Plaintiff's disciplinary investigation after she met with Internal Affairs. Opp. at 3. Such actions do not amount to misleading Plaintiff into unduly delaying the filing of her complaint. Santa Maria, 202 F.3d at 1177-78 (employer's misrepresentations about accommodating plaintiff's disability did not constitute active conduct required to constitute fraudulent concealment and to invoke equitable estoppel). Furthermore, Plaintiff admits that she complained of the alleged harassment to Sergeant Simmons in July and December 2004 and to Sergeant Nugent in October 2004, belying her contention that she was threatened against filing her complaint. Compl., ¶¶ 11, 12, 16. Thus, equitable estoppel is not warranted here.

"Equitable tolling may be applied if, despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence of his claim. Unlike equitable estoppel, equitable tolling does not depend on any wrongful conduct by the defendant to prevent the plaintiff from suing. Instead, it focuses on whether there was an excusable delay by the plaintiff. If a reasonable plaintiff would not have known of the existence of a possible claim within the limitations period, then equitable tolling will serve to extend the statute of limitations for filing suit until the plaintiff can gather what information he needs. However, equitable tolling does not postpone the statute of limitations until the existence of a claim is a virtual certainty." Santa Maria, 202 F.3d at 1178 (citations omitted).

"Because the applicability of the equitable tolling doctrine often depends on matters outside the pleadings, it 'is not generally amenable to resolution on a Rule 12(b)(6) motion.' A motion to dismiss based on the running of the statute of limitations period may be granted only 'if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled.'" Supermail Cargo, Inc. v. United States, 68 F.3d 1204, 1206 (9th Cir. 1995) (citations omitted). Here, Plaintiff claims that she "was not aware of her time limit to go to the EEOC," and argues that Defendants are not prejudiced by tolling the limitations period because they had ample notice of the facts underlying her complaints. Opp. at 4. These allegations are not sufficient. Plaintiff may not invoke equitable tolling when she had sufficient information to know of the possible existence

8

1   of a claim. Santa Maria, 202 F.3d at 1179. Although Plaintiff complained to her superiors, even
2   pursuing grievance or arbitration procedures does not toll the statutory period for filing a Title VII claim
3   with the EEOC. International Union of Elec., Radio and Mach. Workers AFL-CIO, Local 790 v.
4   Robbins & Myers, Inc., 429 U.S. 229, 236 and 240 n.4 (1976) ("Adherence to the limitations period
5   assures prompt notification to the employer of a charge of an alleged violation of Title VII.").
6   Furthermore, Plaintiff's contention that she feared retaliation (which is in tension with her actions in
7   lodging informal complaints) is not a ground for equitable tolling. See Carter v. West Pub. Co., 225
8   F.3d 1258, 1266 (11th Cir. 2000) ("Otherwise, the doctrine of equitable tolling would effectively vitiate
9   the statutory time requirement because an employee could defer filing indefinitely so long as she had
10  an apprehension about possible retaliation."). Thus, Plaintiff has not alleged sufficient facts to support
11  equitable tolling of the statutory period to file her EEOC charge.

**B.  FEHA Claim**

Plaintiff cites both federal and California authority on continuing violations, but does not distinguish between the different standards applied to Title VII and FEHA claims. The California Supreme Court has declined to apply Morgan to FEHA claims, instead applying the continuing violation doctrine to a retaliatory course of conduct "for actions that take place outside the limitations period if these actions are sufficiently linked to unlawful conduct that occurred within the limitations period." Yanowitz v. L'Oreal USA, 36 Cal. 4th 1028, 1056-58 (2005). Under California law, a continuing violation exists where the employer's unlawful actions are: (1) sufficiently similar in kind; (2) have occurred with reasonable frequency; and (3) have not acquired a degree of permanence. Richards v. CH2M Hill, Inc., 26 Cal. 4th 798, 823 (2001) (applied in Yanowitz). Plaintiff's complaint meets this more relaxed standard.

**IV.  Sufficiency of the Allegations of Sexual Harassment: First and Third Causes of Action**

Defendants contend that the FAC fails to state a claim for harassment/hostile work environment under the holding of Brooks v. City of San Mateo, 229 F.3d 917, 927 (9th Cir. 2000), because the alleged conduct was insufficiently severe to alter the conditions of employment. There, the court held that the offensive sexual assault by a coworker, who fondled the plaintiff, was "an entirely isolated incident. It had no precursors and was never repeated." The court found the conduct highly

9

1 offensive, but reasoned that the plaintiff "was harassed on a single occasion for a matter of minutes in
2 a way that did not impair her ability to do her job in the long-term, especially given that the city took
3 prompt steps to remove [the offender] from the workplace." 229 F.3d at 926.  The court also considered
4 that the plaintiff had not alleged that she sought or required hospitalization, or suffered any physical
5 injuries.  Id.  The court refrained from deciding whether a single incident could ever be sufficient to
6 establish a hostile work environment claim, but noted that "an isolated incident of harassment by a *co-*
7 *worker* will rarely (if ever) give rise to a reasonable fear that sexual harassment has become a permanent
8 feature of the employment relationship."  Id. at 924 (emphasis added).

9 Defendants argue that Plaintiff here similarly alleges only a single offensive advance from
10 Costa, which does not rise to a level of severity or establish pervasiveness or frequency sufficient to
11 establish a hostile work environment, particularly where Costa's unwanted physical contact with
12 Plaintiff was somewhat less offensive than the fondling conduct in Brooks.  Brooks is distinguishable
13 in several ways, however.  First, Brooks ruled on a motion for summary judgment, not a motion to
14 dismiss.  Second, Brooks involved a mere co-worker, not a supervisor, like Costa was.  See id. at 927,
15 n.9 ("a sexual assault by a supervisor, even on a single occasion, may well be sufficiently severe so as
16 to alter the conditions of employment and give rise to a hostile work environment claim").  Third, unlike
17 the plaintiff in Brooks, Plaintiff alleges that she was aware that Costa had sexually harassed other
18 women and reported this to Internal Affairs.  FAC, ¶ 17.  Finally, Costa was not immediately
19 investigated, removed or disciplined as was the offending co-worker in Brooks, although Costa retired
20 in January 2005.

21 On a motion to dismiss for failure to state a claim, "a complaint should not be dismissed unless
22 it appears beyond doubt that plaintiff can prove no set of facts in support of her claim that would entitle
23 her to relief."  Yamaguchi v. U.S. Dept. of the Air Force, 109 F.3d 1475, 1480 (9th Cir. 1997).  Here,
24 considering the nature of the unwelcome sexual acts or words, the frequency of the offensive conduct,
25 the time period over which the offensive conduct occurred, and the context in which the sexually
26 harassing conduct occurred, Plaintiff has alleged conditions sufficiently severe or pervasive to state
27 hostile environment claims to survive the motion to dismiss.  See Sheffield v. Los Angeles Co. Dept.
28 of Social Services, 109 Cal. App. 4th 153, 162 (2nd Dist. 2003).  There, the court considered that the

1 aspect of violence demonstrated by a co-worker slamming his fist into his palm could be found to have
2 changed the conditions of employment. Id. at 163-164. Here, an aspect of violence or threat could be
3 found in Costa's divulging personal information about Plaintiff to inmates as well as the grenade
4 comment, especially in the context of working in a jail.

## V. Sufficiency of Allegations of Retaliation: Second and Fourth Causes of Action

Defendants argue that Plaintiff fails to state a prima facie case of retaliation. The elements are: (1) she undertook a protected activity; (2) her employer subjected her to an adverse employment action; and (3) a causal link exists between the two events. See Vasquez v. County of Los Angeles, 349 F.3d 634, 646 (9th Cir. 2004). Causation "may be inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision." Yartzoff v. Thomas, 809 F.2d 1371, 1376 (9th Cir. 1987). See also Flait v. No. American Watch Corp., 3 Cal.App.4th 467, 478 (1992) (reversing judgment for employer on motion for summary adjudication where circumstantial evidence of causal link raised issue of fact). Taking all allegations in the complaint as true, and viewed in the light most favorable to Plaintiff, as required on a motion to dismiss, the FAC sufficiently alleges retaliation.

## VI. Compliance with the California Tort Claims Act

### A. Fifth Cause of Action: wrongful termination

Defendants argue that Plaintiff failed to present her common law claims to the County of Contra Costa or Sheriff Rupf as required by the state Tort Claims Act. Cal. Gov. Code § 945.4. Under the Tort Claims Act, "failure to timely present a claim for money or damages to a public entity bars a plaintiff from filing a lawsuit against that entity." State v. Superior Court (Bodde), 32 Cal. 4th 1234, 1239 (2004). The California Supreme Court has held that "failure to allege facts demonstrating or excusing compliance with the claim presentation requirement subjects a claim against a public entity to a demurrer for failure to state a cause of action." Id.

Plaintiff argues that her cause of action for wrongful termination is based on the same conduct as her FEHA claim for retaliation, and that the purpose of presenting a claim was served by her DFEH charge. Plaintiff cites Snipes v. City of Bakersfield, 145 Cal. App. 3d 861, 868 (5th Dist. 1983), which

United States District Court
For the Northern District of California

1  held that FEHA claims are not subject to the general Tort Claims Act requirements, but did not hold as
2  a general proposition that filing a charge with the DFEH would satisfy the claim presentation
3  requirement under the Tort Claims Act. Plaintiff also cites <u>Williams v. Housing Authority of Los
4  Angeles</u>, 121 Cal. App. 4th 708, 728-29 (2nd Dist. 2004), in which the Court of Appeal held that the
5  public employee need not exhaust the internal administrative remedy set forth in the public entity's
6  policy manual in order to proceed with his non-statutory claims, but did not address the issue of claim
7  presentation, noting that the plaintiff's complaints alleged that he had complied with the Tort Claims
8  Act.

9  Were Plaintiff simply bringing a FEHA claim based on her termination, that claim would be
10 exempt from the claim presentation requirement under the Tort Claims Act. <u>Garcia v. Los Angeles
11 U.S.D.</u>, 173 Cal. App. 3d 701, 711-712 (2nd Dist. 1985). But here, Plaintiff has alleged a wrongful
12 termination claim in addition to the FEHA claims, without complying with the Tort Claims Act.
13 Plaintiff's fifth cause of action for wrongful termination is therefore barred.

**B. Sixth and Seventh Causes of Action: battery and sexual battery**

15 Plaintiff contends that she was not required under the Tort Claims Act to file a government
16 claim as to her battery claims against Costa because his conduct was outside the scope of his
17 employment and thus exempt from Government Code section 950.2.[1] Plaintiff cites <u>Bahan v. Kurland</u>,
18 98 Cal. App. 3d 808, (4th Dist., 1979), which reversed the trial court's grant of summary judgment to
19 the public employee defendant on the ground that the plaintiff did not present a timely claim pursuant
20 to the Tort Claims Act regarding his psychiatrist soliciting murder and burglary. There, however, the
21 conduct was much more severe than what is alleged here, and did not involve co-worker conduct at the

---

[1] This statute provides:
"Except as provided in Section 950.4, a cause of action against a public employee or former public employee for injury resulting from an act or omission in the scope of his employment as a public employee is barred if an action against the employing public entity for such injury is barred under Part 3 (commencing with Section 900) of this division or under Chapter 2 (commencing with Section 945) of Part 4 of this division. This section is applicable even though the public entity is immune from liability for the injury." Cal. Gov. Code § 950.2.

12

place of employment. In <u>Mary M. v. City of Los Angeles</u>, 54 Cal. 3d 202, 209 (1991), the court held that under the doctrine of respondeat superior, "[t]ortious conduct that violates an employee's official duties or disregards the employer's express orders may nonetheless be within the scope of employment." There, a police officer on duty misused his traffic stop authority to rape the plaintiff, and then abused his authority again by threatening to take the victim to jail. Again, Plaintiff here does not allege conduct as severe as the rape alleged in <u>Mary M.</u>, and the central thrust of Plaintiff's complaint is the violation of employment law by her employer. Costa's alleged conduct does not fall outside the scope of employment within the meaning of § 950.2, and Plaintiff was required to file tort claims for the alleged battery and sexual battery. Because she failed to do so, Plaintiff is barred from litigating those claims here.

Defendants' motion to dismiss the Sixth and Seventh Causes of Action is granted.

## VII. Motion to Strike

Defendant Costa also moves to strike the allegations of punitive damages against him on the state law claims. To establish a claim of punitive damages, Plaintiff must show "by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civil Code § 3294(a). Whether Costa acted with oppression, fraud or malice is a question of fact. The authorities cited by Costa do not support the motion to strike: <u>see, e.g.,</u> <u>Clausen v. Superior Court</u>, 67 Cal. Appl.4th 1253, 1255 (1998) (holding that plaintiff could pursue both punitive and statutory damages); <u>Grieves v. Superior Ct.</u>, 157 Cal. App. 3d 159, 166 (1984) (directing trial court to grant motion to strike punitive damages where plaintiff alleged only negligence, and no intentional conduct); <u>Blegen v. Superior Ct</u>., 125 Cal. App. 3d 959, 962-62 (1981) (vacating order to strike punitive damages for allegations of malpractice which presented issue of fact). As Plaintiff's retaliation and sexual harassment claims against Costa under FEHA survive the motion to dismiss, <u>see Taylor v. City of Los Angeles Dept. of Water and Power</u>, 144 Cal. App. 4th 1216, 1236-37 (2nd Dist. 2006), Costa's motion to strike the allegations of punitive damages is denied without prejudice.

## VIII. Conclusion

Defendants' motion to dismiss is granted as to the First, Fifth, Sixth and Seventh causes of action, with leave to amend if Plaintiff can allege that she exhausted her administrative remedies as to

those claims. Defendants' motion to dismiss is denied as to the Second, Third, and Fourth causes of action. Plaintiff shall amend her complaint in accordance with this Order no later than **February 22, 2007**. Defendant's motion to strike is denied without prejudice.

This order disposes of Docket Nos. 21 and 22.

IT IS SO ORDERED.

Dated: February 1, 2007

*Elizabeth D. Laporte*
ELIZABETH D. LAPORTE
United States Magistrate Judge